# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHANIE LEPERA, | : | CASE NO. 3:13-cv-02077-GBC |
| | : | |
| Plaintiff, | : | (MAGISTRATE JUDGE COHN) |
| | : | |
| v. | : | MEMORANDUM TO DENY PLAINTIFF'S |
| | : | APPEAL |
| CAROLYN W. COLVIN, | : | |
| ACTING COMMISSIONER OF | : | Docs. 1,7,9,12 |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM TO DENY PLAINTIFF'S APPEAL

### I. Procedural History

On October 18, 2010, Stephanie Lepera ("Plaintiff") filed an application for Title XVI

application for Supplemental Security Income ("SSI"), with an alleged onset date of June 10, 2008.

This application was denied, and on December 14, 2011, a hearing was held before an

Administrative Law Judge ("ALJ"), where Plaintiff appeared with counsel and testified, as did a

vocational expert (Tr. 42-88). On March 15, 2012, the ALJ issued a decision finding that Plaintiff

was not entitled to SSI because Plaintiff could perform a limited range of sedentary work (Tr. 14-20,

Finding No. 4). The ALJ found Plaintiff could not perform past relevant work as a cashier, bartender, and van driver (Tr. 20). However, the ALJ further determined, based on VE testimony, that Plaintiff could perform a significant number of jobs existing in the national economy, including the representative jobs of label printer, weight tester, and order clerk (Tr. 73-74). On June 4, 2013, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner.

On August 2, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 1383(c)(3), to appeal the decision of the Commissioner of the Social Security Administration denying social security benefits. Doc. 1. On November 15, 2013, Commissioner filed an answer and administrative transcript of proceedings. Docs. 6,7. In January and March 2014, the parties filed briefs in support. Docs. 9,12. On April 30, 2014, the Court referred this case to the undersigned Magistrate Judge. In June and July, 2014, the parties consented to Magistrate Judge jurisdiction. Docs. 14-17.

## II.      Standard of Review

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999); Johnson, 529 F.3d at 200.

This is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence is satisfied without a large quantity of evidence; it requires only "more

than a mere scintilla" of evidence. <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999). It may be less than a preponderance. <u>Jones</u>, 364 F.3d at 503. Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986).

To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

Moreover, the Act requires further that a claimant for disability benefits must show that he has a physical or mental impairment of such a severity that: "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

### III. Relevant Facts in the Record

### A. Background and Vocational Factors Relevant to Plaintiff's Ability to Work

Plaintiff was 33 years old on her alleged disability onset date (Tr. 20, Finding No. 6), and is a younger individual according to the Commissioner's Regulations. 20 C.F.R. § 416.963 (2013). She alleges disability due to "spine injury; bone disease; severe nerve damage; slipped disk;

postpartum anxiety; learning disability; OCD; and arthritis" (Tr. 194).

At the time of the administrative hearing, Plaintiff lived with and cared for her two young children (Tr. 52). Although she did not graduate from high school, she never attended special education classes (Tr. 195, 391, 394, 413, 416, 431, 433, 435-36). Her prior work history includes jobs as a bartender, cashier, and van driver (Tr. 195). She reported that she stopped working for "personal reasons" (Tr. 296). Despite Plaintiff's allegations of disabling limitations, she reported that she cared for her children; cared for her pet cat; prepared meals; performed household chores, including vacuuming and laundry; cared for her personal needs with some assistance; went outside; rode in a car; went out alone; shopped in stores; paid bills; counted change; handled a savings account; and used a checkbook/money orders (Tr. 180-83). She had no problem getting along with others, including authority figures, she was able to follow spoken and written instructions, and she could handle stress and changes in routine (Tr. 185-86). She reported that hot showers helped to relieve her pain (Tr. 189). Despite her allegations of pain, Plaintiff reported that none of her treating physicians prescribed a cane or other assistive device (Tr. 186).

### B. Relevant Medical Evidence

### 1. Evidence Relevant to Plaintiff's Physical Impairments

### a. John B. Chawluk, M.D. and Colby Powell, PA-C

In July 2008, Ms. Powell evaluated Plaintiff for pain in her low back, hip, and leg, paresthesias, and intermittent weakness (Tr. 330). Examination revealed intact vibratory and pin sensations, no dorsiflexion weakness, negative Babinski response, bilateral straight leg raising, full strength, normal gait, and normal heel and toe walking (Tr. 330-31). Plaintiff was alert and in no distress, she was able to rise from a squatting position without using her hands, and she reported that

she used ibuprofen for pain (Tr. 330-31). Ms. Powell recommended an MRI of Plaintiff's lumbar spine as well as an EMG and nerve conduction study of her lower extremities (Tr. 331).

An MRI of Plaintiff's lumbar spine revealed shallow posterior and right-sided disc herniation at L4-5, possible uterine enlargement,[1] and relatively mild posterior and right sided disc protrusion at T11-12 (Tr. 329). EMG and nerve conduction studies revealed generally normal results with the possibility of mild bilateral sciatica (Tr. 325).

On October 22, 2008, Plaintiff reported that she began physical therapy (Tr. 323). Examination findings were unremarkable and included symmetric reflexes; no dorsiflexion weakness; intact vibratory sensations; negative bilateral straight leg raising; normal gait; and normal tandem gait, and she recommended physical therapy (Tr. 323).

### b. Geisinger Family Practice

In April 2011, Plaintiff reported that her back was stable (Tr. 363). On August 5, 2011, Denise Hintosh, PA-C, observed that Plaintiff was alert and oriented, her gait was normal, and her reflexes were normal and symmetric (Tr. 380).

### c. Christopher Zacko, M.D.

In November 2011, Plaintiff complained of pain in her low back and legs (Tr. 340). Dr. Zacko's examination notes revealed excellent motor strength, normal gait, and no sensory deficits (Tr. 340). A lumbar spine MRI revealed degenerative changes at L4-5 (Tr. 340). When Dr. Zacko discussed pain management and surgical options, Plaintiff became frustrated and tearful (Tr. 340). She reported that she did not want surgery, but met with Dr. Zacko at her attorney's insistence (Tr.

---

[1] Plaintiff later reported that she was advised that this was related to "her numerous childbirths" (Tr. 323).

340). Dr. Zacko was unsure how to proceed, and he advised Plaintiff that he could not determine her candidacy for disability (Tr. 340).

### 2. Evidence Relevant to Plaintiff's Mental Impairments

### a. ReDCo Group Behavioral Health Services

At her initial evaluation on December 30, 2010, Plaintiff reported that she had no history of psychiatric treatment, but alleged that she might be "bipolar" because she "flips out easy" (Tr. 337). She complained of difficulty sleeping, anhedonia, low energy, difficulty concentrating, and decreased appetite (Tr. 337). She denied suicidal or homicidal ideation, auditory or visual hallucinations, and delusions (Tr. 337). Plaintiff reported that she supported herself with her son's disability benefits, child support, and cash assistance, but also stated that she performed "errands" to support herself (Tr. 338).

Erica Borrell McDonald, PA-C, observed that Plaintiff was alert and oriented to person, place and time; her mood was euthymic; her affect was congruent; she maintained good eye contact; her speech was fluent; and her thought process was goal-directed (Tr. 338). She assessed major depressive disorder and generalized anxiety disorder, assessed Plaintiff's GAF at 55-60, and prescribed medication (Tr. 338-39).

Plaintiff failed to appear for an appointment on January 26, 2011 (Tr. 336). On February 4, 2011, she reported that she was compliant with her medication and denied side effects (Tr. 335). She stated that her mood was an "eight" out of "ten," and admitted that she had been doing things for herself (Tr. 335). Ms. McDonald opined that Plaintiff was alert and oriented, with a dysphoric mood, congruent affect, fluent speech, good eye contact, and a goal-directed thought process (Tr. 335). She assessed major depressive disorder and generalized anxiety disorder, prescribed medication, and

assessed her GAF at 60 (Tr. 335).

On March 2, 2011, Plaintiff reported a 40% improvement in her depression (Tr. 334). Ms. McDonald noted that Plaintiff's affect was brighter, but otherwise her observations and assessment remained unchanged (Tr. 334). On April 5, 2011, Plaintiff reported that she was not depressed (Tr. 333). She reported continued improvement in June 2011, and in November 2011, she stated that she was doing "okay" (Tr. 332, 346).

### 3. Consultative Examination Reports

In January 2011, Christos Eleftherios, Ed.D., conducted a consultative examination (Tr. 292-300). Plaintiff drove herself to the appointment and attended alone (Tr. 296). She reported that she was unable to walk three blocks, and her hips and legs gave out on her (Tr. 296). She was raising her two children, ages two and five, and she was able to clean and cook (Tr. 296-97). Dr. Eleftherios observed no obvious physical, sensory, or motor abnormalities, and opined that Plaintiff was oriented, alert, verbal and cooperative (Tr. 296, 299). Although Plaintiff alleged mild depression, Dr. Eleftherios noted that it was not evident during his examination (Tr. 299). Her thinking was clear, logical, and goal-directed, her speech was normal, and her insight and judgment were fair (Tr. 299). Although Plaintiff complained of "bone disease, deteriorating muscles, spine injury, nerve damage in my neck, slip discs in my back, and numbness in my right thumb, left arm, and leg," she reported that she was not receiving medical treatment (Tr. 296-97). She also reported that she became frustrated easily (Tr. 297).

Dr. Eleftherios administered the Wechsler Adult Intelligence Scale – III Edition (Tr. 298). Plaintiff obtained a verbal IQ of 78, a performance IQ of 73, and a full scale IQ of 74, which, he opined, placed her within the borderline level of intelligence (Tr. 298). Dr. Eleftherios opined that

Plaintiff's ability to understand, remember, and carry out instructions was slightly to moderately impaired; her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting was moderately impaired; and she was capable of managing benefits in her own best interest (Tr. 294-95). Finally, he opined that Plaintiff's prognosis was fair (Tr. 300).

#### 4. State Agency Physician Reports

In January 2011, state agency mental health expert Elizabeth Hoffman, Ph.D., reviewed the record and completed a psychiatric review technique form (PRTF) and mental RFC assessment (Tr. 301-18). She assessed learning disorder NOS, dysthymic disorder, and borderline intellectual functioning (Tr. 303). Dr. Hoffman found only no significant to moderate limitations in Plaintiff's understanding and memory, sustained concentration and persistence, social interaction and adaptation (Tr. 301-02). She also opined that Plaintiff experienced moderate restriction in her activities of daily living, moderate difficulties in maintaining social functioning, concentration, persistence, and pace, and no repeated episodes of decompensation (Tr. 315). As a result, she opined that Plaintiff was capable of making simple decisions, carrying out very short and simple instructions, and maintaining regular attendance and punctuality, and she would not require special supervision in order to sustain a work routine (Tr. 303). In support of her opinion, Dr. Hoffman noted that Plaintiff was capable of caring for her needs independently, taking care of her children, cooking, cleaning, going out alone, shopping, and managing her money (Tr. 303). As a result, she opined that Plaintiff could meet the demands of competitive work on a sustained basis despite the limitations stemming from her impairment (Tr. 303).

//

//

## C. Vocational Expert Testimony

At the administrative hearing, the VE testified that Plaintiff's past relevant work included working as a cashier, which was light in exertional level and semi-skilled in nature; a bartender, which was light in exertional level and semi-skilled in nature; a waitress, which was light in exertional level and semi-skilled in nature; and a van driver, which was medium in exertional level and semi-skilled in nature (Tr. 72).

The ALJ asked the VE whether jobs existed for a person of Plaintiff's age, education, and work experience, who could perform unskilled, sedentary work in a primarily seated position with additional limitations, including the ability to relax from a seated position on a half-hour to hourly basis; no more than occasional overhead reaching; never climbing ladders, scaffolds, or ropes; occasionally climbing ramps or stairs; never kneeling or crawling; occasionally bending at the knee, balancing, stooping, or crouching; no poorly ventilated work areas or high concentrations of respiratory irritants such as odors, dusts, gases, and fumes; and a moderate production pace without a high volume, high intensity, strict quota system (Tr. 73-74). The VE testified that such a person could perform a significant number of jobs existing in the national economy, including the representative jobs of label printer, weight tester, and order clerk (Tr. 73-74).

## IV.    Review of ALJ Decision

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §§ 404.1520, 416.920; see also Plummer, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in

substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### A.    Plaintiff Allegations of Error

### 1.    The ALJ Review of Criteria for a Listed Impairment

Plaintiff contends the ALJ erred by failing to find that Plaintiff met the requirements for a listed impairment. Pl. Br. at 2, Doc 9.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Plaintiff makes a general argument regarding the ALJ's step three analysis and fails to point to evidence in support of her position.[2] Contrary to Plaintiff's assertion, the ALJ correctly found that

---

[2] Plaintiff asserts that she met Listings 12.02, 12.04, 12.05, and 12.06. The Court notes the

her mental impairments did not meet or medically equal the criteria of a listed impairment, specifically Listing 12.04 (affective disorders), 12.05 (intellectual disability / mental retardation), or 12.06 (anxiety related disorders) (Pl.'s Br. at 2). See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.05, and 12.06. Contrary to Plaintiff's argument, the ALJ correctly found that her impairments were not per se disabling at step three of the sequential evaluation process.

At step three, if an individual has an impairment that meets an impairment listed in the regulations, she is considered presumptively disabled. 20 C.F.R. § 416.925(a). The diagnosis of an impairment is never sufficient by itself to meet or equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 416.925(d). Rather, a claimant's impairment meets a listed impairment only if she meets all of the required criteria for the listed impairment. Zebley, 493 U.S. at 530. Plaintiff, not the Commissioner, bears the burden of proving that her impairments are disabling at step three. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (stating that it is the claimant's burden to present medical findings that show that her impairment matches or is equal in severity to a listed impairment).

Substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal Listings 12.02, Organic Mental Disorders 12.04, Affective Disorders; 12.05, Intellectual Disability / Mental Retardation; and 12.06, Anxiety Related Disorders (Tr. 11-14, Finding No. 3). Because substantial evidence supports the ALJ's conclusion that Plaintiff's mental impairments, namely a mood disorder (referenced as both major depressive disorder and dysthymia) and low average intellectual functioning with a learning disorder, did not meet or medically equal

---

appropriate titles of these Listings are 12.02, organic mental disorder; 12.04, affective disorders; 12.05, intellectual disability (mental retardation); and 12.06 anxiety related disorders.

a listed impairment (Tr. 10-14), Plaintiff's argument to the contrary must fail.

In order to meet Listing 12.02, Plaintiff had to exhibit the clinical signs required by 12.02A and demonstrate the degree of severity of functional limitations required by 12.02B, or satisfy the requirements of 12.02C. 12.02 B requires a showing of at least two of the following: 1. Marked restriction of activities of daily living; 2. Marked difficulties in maintaining social functioning; 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration. 12.02C requires: A medically documented history of a chronic organic mental disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms and signs currently attenuated by medication or psychosocial support and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

In order to meet Listing 12.04, Affective Disorders, Plaintiff had to exhibit the clinical signs required by 12.04A and demonstrate the degree of severity of functional limitations required by 12.04B, or satisfy the requirements of 12.04C. 12.04B requires a showing of at least two of the following: 1. Marked restriction of activities of daily living; 2. Marked difficulties in maintaining social functioning; 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration. 12.04C requires: A medically documented history of impairment of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms and signs currently

attenuated by medication or psychosocial support and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

In order to meet Listing 12.06, Anxiety Related Disorders, Plaintiff had to exhibit the clinical signs required in 12.06A and demonstrate the degree and severity of functional limitations required by 12.06B, or satisfy the requirements of 12.06C. 12.06C requires complete inability to function independently outside the area of one's home.

The ALJ first explained why the "paragraph B" criteria of the listings were not satisfied (Tr. 1112). 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.02, 12.04, 12.06. Specifically, the ALJ found that Plaintiff had moderate limitations in her ability to perform daily activities because the evidence showed that she was able to care for her children and a pet; care for her personal needs; perform household chores; go outside alone; shop in stores; and attend church (Tr. 12). The ALJ determined that Plaintiff had moderate difficulties in social functioning because the evidence revealed that she had no problems getting along with other, including authority figures, although she testified that she rarely left the house because she had difficulty being around people (Tr. 12). Next, the ALJ found that Plaintiff had only mild difficulties in concentration, persistence, or pace, since she could pay attention for a few hours; finish what she starts; follow both written and spoken instructions "good;" handle stress and changes in routine "good;" pay bills; handle money; count change, watch television and movies; listen to music; sing; and use a computer (Tr. 12). As for the final "paragraph B" criteria, the ALJ correctly determined that no evidence demonstrated that Plaintiff experienced

episodes of decompensation (Tr. 13).

After finding the evidence failed to satisfy the "paragraph B" criteria, the ALJ next determined that the "paragraph C" criteria of the listings had not been met because no evidence demonstrated that Plaintiff had a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do work related activities, with symptoms or signs currently attenuated by medication or psychosocial support, and either repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause her to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement (Tr. 13). 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(C), 12.04(C), 12.06(C). Thus, the ALJ reasonably concluded that Plaintiff's impairments did not meet or medically equal a listing-level organic mental disorder, affective disorder, or anxiety related disorder.

Next, Plaintiff asserts that the ALJ erred by finding that does not meet any of the four sets of criteria under Listing 12.05, Intellectual Disability / Mental Retardation, (12.05 A, B, C, or D) because the evidence fails to satisfy the diagnostic description of intellectual disability set forth in the introductory paragraph of 12.05. 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.00A.

The preface to Section 12.00 of the mental listings explains that Listing 12.05 is met "[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria." 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.00A; <u>see also Royesky v. Comm'r of Soc. Sec.</u>, 2011 WL 1331891 (W.D. Pa. Mar. 29, 2011) ("In order to meet or equal Listing 12.05, Plaintiff must prove both that he experiences 'deficits in adaptive functioning' and that he meets the

requirements in subsections A, B, C, or D"). Specifically, Plaintiff must proffer evidence showing "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22," 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.05. Plaintiff failed to proffer such evidence, or any evidence at all (Pl.'s Br. at 2).

Adaptive functioning refers to how effectively individuals cope with the common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting. DSM-IV, at 40. The DSM-IV requires significant limitation in adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM-IV, at 39.

Overwhelming record evidence demonstrates that Plaintiff did not experience the deficits in adaptive functioning necessary to meet the requirements of Listing 12.05. Plaintiff did not attend special education classes (Tr. 413, 416, 431, 433, 435-36). Her prior work history includes jobs as a bartender, cashier, and van driver, and she reported that she stopped working for "personal reasons" (Tr. 195, 296). She was able to care for her children; care for her pet cat; prepare meals; perform household chores; go outside alone; shop in stores; pay bills; count change; handle a savings account; and use a checkbook/money orders (Tr. 180-83). She had no problem getting along with others, including authority figures, she was able to follow spoken and written instructions, and she could handle stress and changes in routine (Tr. 185-86).

Because Plaintiff failed to demonstrate deficits in adaptive functioning prior to age 22, she failed to prove that her condition met the requirements of Listing 12.05. See Zebley, 493 U.S. at 530 ("For a claimant to show that [her] impairment matches a listing, it must meet all of the specified

medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Accordingly, substantial evidence supported the ALJ's step-three finding that Plaintiff was not per se disabled.

Ultimately, Plaintiff is asking this Court to re-weigh the evidence to find that she was disabled at step three of the sequential evaluation process. Plaintiff's request is impermissible as a matter of law. Bloodsworth v. Heckler, 703 F.2d at 1239. As reflected in the ALJ's comprehensive analysis, substantial evidence supports the finding that Plaintiff was not per se disabled at step three of the sequential evaluation process. Accordingly, the ALJ's decision should be affirmed.

**2. ALJ Review of Medical Evidence, RFC Determination, and Hypothetical to VE**

Plaintiff contends the ALJ erred in finding the residual functional capacity and corresponding hypothetical question to the VE without properly evaluating the medical evidence. Pl. Br. at 2, Doc. 9.

### a. Case Law and Analysis

The weight afforded to any medical opinion is dependent on a variety of factors, including the degree to which the opinion is supported by relevant evidence and consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(3)-(4). Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion. 20 C.F.R. § 404.1527(c)(4). A treating physician's opinion does not warrant controlling weight under the regulations unless it is well supported by clinical and laboratory diagnostic findings and consistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); Plummer, 186 F.3d at 429. If a treating source's opinion is not entitled to controlling weight, the factors outlined in 20 C.F.R. § 404.1527(c)(2) are used to determine the weight to give the opinion. Id. The more a treating source presents medical signs and laboratory findings to support his medical opinion, the more weight it is entitled. Id. Likewise, the

more consistent a treating physician's opinion is with the record as a whole, the more weight it should be afforded. Id. The Commissioner is not bound by a treating physician's opinion, and may reject it, if there is a lack of clinical data supporting it, or if there is contrary medical evidence. Lyons-Timmons v. Barnhart, 147 F. App'x 313, 316 (3d Cir. 2005).

The ALJ, not the treating or examining physician, must make the disability and residual functional capacity determination. 20 C.F.R. § 404.1527(d)(1)-(2); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356 (3d Cir. 2011). "The law is clear that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Chandler, 667 F.3d at 361; Coleman v. Astrue, 2012 WL 3835403, at *2 (3d Cir. Sept. 5, 2012) (holding that ALJ may choose non-examining physician opinion over treating physician opinion as long as medical evidence not rejected for wrong reason or no reason).

The case law in this circuit makes clear that physician opinions are not binding upon an ALJ, and that an ALJ is free to reject a medical source's conclusions. Chandler, 667 F.3d 356 at 361. In so doing, however, the ALJ must indicate why evidence was rejected, so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.1981). Mistick v. Colvin, No. 12-cv-1031, 2013 WL 5288261 (W.D. Pa. Sept. 18, 2013).

After carefully reviewing the entire record, the ALJ determined that Plaintiff's severe impairments included mood disorder (referenced as both major depressive disorder and dysthymia), degenerative disc disease of the lumbar spine, low average intellectual functioning with a learning disorder, asthma (with a history of exacerbation leading to bronchitis and sinusitis), and obesity (Tr. 10-11, Finding No. 2). The ALJ then determined that despite the limitations caused by these severe impairments, Plaintiff possessed the RFC to perform a limited range of sedentary work (Tr. 14-20,

Finding No. 4). Substantial evidence supports the ALJ's RFC determination.

The limitations found by the ALJ are well-supported by the objective medical evidence. First, as the ALJ discussed, although Plaintiff walked with a mildly antalgic gait, she was doing fairly well overall (Tr. 16). Isolated motor strength testing revealed full strength, she did not experience numbness, and there were no pathologic reflexes (Tr. 16). Plaintiff was uninterested in aggressive management of her medical conditions, and Dr. Zacko stated that surgery was not in Plaintiff's best interest and recommended conservative treatment, including injection therapy if things were to worsen (Tr. 16, 285-87). Plaintiff was not interested in pursuing that course of treatment (Tr. 16, 286). Next, Plaintiff's back remained stable, and August 2011 neurological examination results were unremarkable (Tr. 16). Plaintiff also had a history of asthma, with exacerbations leading to bronchitis and sinusitis (Tr. 16, 363, 366, 378). Nevertheless, she continued to smoke a half-pack of cigarettes each day (Tr. 16, 365, 380). Plaintiff is also obese. Her primary physician advised her to lose weight through proper diet and exercise (Tr. 17, 363, 371, 378, 380-81, 383).

With respect to her mental impairments, Plaintiff did not attend special education, nor did she meet her school district's criteria for learning-disabled students (Tr. 17, 416, 427, 431, 433-36). IQ tests administered during a consultative examination revealed results within the range of borderline intellectual functioning (Tr. 17). During the examination, Plaintiff was alert and cooperative, her thinking was clear, logical, and goal directed, her speech was normal, and she displayed no evidence of a thought disorder, hallucinations, or delusions (Tr. 17). Dr. Eleftherios opined that Plaintiff had only slight to moderate restrictions in understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures (Tr. 18). Plaintiff reported improvement in her mood disorder symptoms with medication

and therapy, and consistently maintained a GAF of 60 (Tr. 18).

While the foregoing medical evidence demonstrates that Plaintiff's impairments caused limitations, it is also fully compatible with the ALJ's RFC determination and shows that Plaintiff's impairments did not support the Act's standard on disability.

Further support for the ALJ's RFC assessment comes from Plaintiff's own statements concerning her activities and abilities. Plaintiff herself reported that she was able to care for her personal needs; care for her two young children and a pet; perform household chores; prepare meals; shop in stores; and manage her finances (Tr. 180-83). She had no problem getting along with others, including authority figures, she was able to follow spoken and written instructions, and she could handle stress and changes in routine (Tr. 185-86). These activities –particularly her ability to care for her family, follow instructions, and handle stress and changes in routine – seriously undermined her allegations of disabling physical and mental limitations. Finally, Plaintiff reported that she stopped working for "personal reasons" (Tr. 296).

In sum, the ALJ reviewed the relevant evidence – including the objective findings, opinion evidence, and Plaintiff's subjective complaints – and then fully accommodated Plaintiff's impairments and credible subjective complaints – before determining that Plaintiff possessed the RFC set forth in the decision (Tr. 14-20). Therefore, the record contains such relevant evidence as a reasonable mind might accept as adequate to support the ALJ's assessment of Plaintiff's RFC. See Pierce v. Underwood, 487 U.S. 552, 564-65 (1988), and the ALJ's decision should be affirmed.

The ALJ's hypothetical question to the VE accounted for all of Plaintiff's functional limitations that were supported by the objective medical evidence. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise, the question is deficient and the expert's

answer to it cannot be considered substantial evidence").

In his hypothetical question, the ALJ asked the vocational expert to consider a hypothetical person who could perform a limited range of unskilled, sedentary work without exposure to a high concentration of respiratory irritants such as odors, dust, gasses, fumes, or poorly ventilated work settings, and only simple, routine work activities with no more than occasional changes, a moderate production pace, and no strict quotas (Tr. 73-74). Even with these significant restrictions, the VE testified that the hypothetical individual would be capable of performing many unskilled jobs in the national economy (Tr. 73-74). This VE testimony constitutes substantial evidence that Plaintiff was not disabled within the meaning of the Act. See Plummer, 186 F.3d 422, 431 (3d Cir. 1999) (stating that a VE's testimony in response to a hypothetical question that fairly set forth every credible limitation established by the physical evidence was substantial evidence of non-disability and satisfied the Commissioner's burden at step five).

Because the ALJ's hypothetical question to the vocational expert fairly set forth all of Plaintiff's limitations, the vocational expert's testimony regarding the existence of jobs that Plaintiff could perform constitutes substantial evidence supporting the ALJ's decision that Plaintiff is not disabled. Accordingly, the Commissioner's final decision should be affirmed.

Thus, the ALJ's RFC finding includes only "credibly established limitations" and not all impairments alleged by claimant, Rutherford, 399 F.3d at 554. Accordingly, the ALJ relied on the record and testimony in determining Plaintiff's residual functional capacity, and the findings are supported by substantial evidence.

In Chandler, 667 F.3d at 362, the Third Circuit found that the district court had erred in concluding that the "ALJ had reached its decision based on its own improper lay opinion regarding medical evidence." Id. "The ALJ– not treating or examining physicians or State agency consultants

–must make the ultimate disability and RFC determinations." Id. at 361 (citing 20 C.F.R. 404.1527(e)(1), 404.1546(c)).

"[T]he ALJ is not bound to accept every limitation that is found by a medical professional, but rather only the ones that she finds are credibly established by the record. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 147 (3d Cir. 2007). Contrary to Plaintiff's assertion, the ALJ did not err by incorporating into her RFC finding only those limitations which she found to be credibly established by the objective medical evidence and the Court finds that the ALJ's RFC determination as well as her ensuing hypothetical to the vocational expert both enjoy the support of substantial record evidence. Finally, the Court finds that the ALJ evaluated the medical opinion evidence properly and in accordance with the applicable rules and regulations and that substantial record evidence supports her evaluation. The ALJ gave a detailed explanation for why the medical source statements from the mental health providers were not given controlling weight the ALJ discussed at length her justification for why the medical source statements from Dr. Jahangeer and Ms. Walker were inconsistent with and contradicted by the other medical evidence of record, including their own notes and prior findings. The Court finds that the ALJ discharged her duty because she (i) demonstrated her consideration of all the relevant medical evidence, (ii) addressed the contradictory evidence in the record which conflicted with her findings, and (iii) explained why that contrary evidence was rejected or not given controlling weight. See Cotter, 642 F.2d at 705. Indeed, the overarching theme of the ALJ's decision was the complete lack of objective medical evidence which corroborated or even tended to support Plaintiff's complaints of severely disabling impairments and the Court agrees with the ALJ's finding that such corroborating evidence was woefully lacking in the record. Plaintiff's subjective complaints were corroborated only by her own self-reports, which—for the reasons discussed by the ALJ—were not particularly credible. To that end, the Court

finds that the ALJ's credibility determination is well-supported by the record and that Plaintiff's arguments to the contrary are completely unpersuasive, particularly given the minimal treatment record, the inconsistencies in the record that were highlighted and discussed by the ALJ . . . Accordingly, the Court concludes that substantial record evidence supports the ALJ's determination of non-disability." Stewart v. Astrue, No. 13–73, 2014 WL 29035, at *1, n.1 (W.D. Pa. Jan. 2, 2014) (emphasis added).

Similarly in this case, the record does not support Plaintiff's assertions of disabling severity. Plaintiff's contentions of error are inconsistent with the objective evidence and activities of daily living. From the ALJ's extensive review, substantial evidence supports the weight accorded to the allegations and opinions of record.

### 3.   The ALJ Found Plaintiff Could Not Perform Past Work

Plaintiff states she cannot perform her past work and had no transferrable job skills. Pl. Br. at 2, Doc. 9. The ALJ agreed and found Plaintiff could not perform past relevant work as a cashier, bartender, and van driver (Tr. 20). However, the ALJ found Plaintiff was not entitled to SSI because Plaintiff could perform a limited range of sedentary work (Tr. 14-20, Finding No. 4). The ALJ further determined, based on VE testimony, that Plaintiff could perform a significant number of jobs existing in the national economy, including the representative jobs of label printer, weight tester, and order clerk (Tr. 73-74). Thus, substantial evidence supports the ALJ's decision that Plaintiff did not meet the criteria for disability.

### V.   Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; Brown, 845 F.2d at 1213; Johnson, 529 F.3d at

200; Pierce, 487 U.S. at 552; Hartranft, 181 F.3d at 360; Plummer, 186 F.3d at 427; Jones, 364 F.3d at 503.

Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr., 806 F.2d at 1190. Here, a reasonable mind might accept the evidence as adequate, and the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. §§ 405(g), 1382c.

An appropriate order in accordance with this memorandum to deny Plaintiff's appeal will follow.

Dated: October 17, 2014                          s/Gerald B. Cohn
                                        _____
                                              GERALD B. COHN
                                     UNITED STATES MAGISTRATE JUDGE